Good morning. May it please the Court, Kirk Passage for Appellants Bradley Cohen and Cohen Asset Management. I would note that if there are things you did like about the briefs, I need to commend Ms. Woods and Mr. Davis, who actually bore the laboring oar, and they'll all take responsibility. Always dangerous to have you argue it then, right? Well, I think what they were suggesting to me is something that is on the lines of they've given me a winner so I shouldn't blow it. We'll find out. I would like to reserve two minutes. Why don't you start with the fraud finding, because it seems to me that dooms your case, and I don't really even care about the other two. Maybe you could just jump in and talk about fraud. It was exactly where I was going to start, because I think that's the appropriate question, because my visceral reaction in looking at these special interrogatories and the judgment that were entered on those would, fraud's a problem for us, and I certainly concede it's a problem for us. I don't think it's dispositive, though, and the reason I don't think it's dispositive is the materials that were submitted in the request for judicial notice, which we obviously have objected to, but if they're considered, they show what is referenced in one of the footnotes in Berkeley's brief, which is the instruction. We're dealing with an employer in Northwest. Northwest was the compensatory damages finding against Northwest were $11 million. The instruction for Northwest talks not about what you know or ratify. That's one basis for a finding of fraud or malice or oppression, for that matter, ratification by the employer, but employing somebody who's not suitable. That's a piece of what we're talking about here, and in fact, that specific statement, and I pulled it out because I thought it was really interesting. When you have that joint position of it can be an employer that ratifies or authorizes the wrongful act, that's a basis for the finding of fraud, malice or oppression on the punitive damage award, or you can find that the employer has hired someone who is not suitable for the position they're holding, who may act inappropriately. That's where we draw the distinction because I would agree with Your Honor. If it's just the second point, we have a problem. Do that again because you've lost me. I understood the jury verdict to have been predicated on the jury's finding that the conduct that the employees engaged in, the was itself done with fraudulent intent. I can't remember what the instructions of their frame, but it's basically they knew that what they were putting up there was not true and that they had done it to try to harm the plaintiff. Well, I think there's two ways we have to look at this. One is what was the premise for liability against Hanson and Northwest in particular? The premise of liability is exactly what you said, but that's not what determines insurance coverage. The insurance coverage standard is different, and there was testimony in the record. I mean, Mr. Hanson, whether he's credible or not, testified that he didn't intend to hurt. That's a piece of the testimony, and we cited that testimony. I mean, the exact question. Well, the jury, we don't care what the testimony was, right? We care what the jury found, and we know what the jury found. Well, we do know what the jury found, and I don't quarrel with that at all. Our point is very simple, that there's two different standards. That's why we cited Dart Industries and the City of Turlock in that line of cases, because those lines of cases recognize, and Dart, I think, this court's decision in Dart, I believe, is controlling here. I mean, it applied California law, but the Nevada courts will look to California on an issue they haven't addressed. I think Dart's controlling because you had the president of the company that engaged in a libelous act within the course and scope of employment. That was sufficient to tag the company for liability for that libel, but it didn't result in the forfeiture of coverage, and it didn't result in the forfeiture of coverage because the board of directors, there was no evidence that the board of directors of Dart authorized or instructed the employee to do it. Now, this is a high-level executive within the company. But counsel, I mean, you attached, correct me if I'm wrong, but your complaint from the first action was attached as an exhibit to your complaint in this case, right? So we can look at that, and it describes in some detail what this whole scheme was and the retaliatory motive behind it. And so, you know, how, you know, the jury obviously agreed because they awarded you damages, and so how consistent with that complaint do you get to the idea of rogue employees out there doing something on their own? Because the complaint suggests that all the defendants were acting in concert as part of this. That's certainly the allegation of the complaint, and we attach those because we're not trying to hide behind anything here. We think there were heinous activities that were undertaken by Hanson and Northwest and the employees. We don't disagree with that. That's what was established. But when you look at the language of the insurance policy here, and this is the critical factor, when you look at the language of the insurance policy, it requires a couple of things to be shown, and I would submit that neither the judgment nor the verdict, nor for that matter the special interrogatories, show what the insurance policy requires Berkeley to show to avoid coverage. And there's no reason it would. Berkeley and the coverage clauses were not part of the proceeding below. They require cause fire at the direction of the insured, so there has to be some evidence that the insured, in this case Northwest, directed Hanson and directed Firebaugh to do this. And there's nothing in the judgment that says that. Yes, there's a finding of fraud. There's a finding of malice. There's a lot of things like a conscious disregard of known rights. That's not the same thing as knowledge that you're violating somebody's right at the direction of the name insured, which is Northwest. And so we absolutely would focus on the fact that what the policy requires... But doesn't it actually say caused by, or at the direction? Correct. Caused by or at the direction of the insured. And so I don't think there's any evidence that was adduced below on the motion to dismiss that Northwest caused this. We're not arguing that Hanson didn't do this or that Hanson didn't act with bad motivation, but we are talking about an entity, an LLC, and there has to be some evidence proffered by the insurance company to show that Northwest, the entity, directed Hanson. Now I know there's a close relationship... Doesn't an LLC act only through its employees, officers, and so on? But so too a corporation. And that's why I think Dart Industries is the controlling precedent here, because you had the president of the company taking the inappropriate actions in Dart. In City of Turlock, it was the city of attorney who had the authority to make the decisions about legal positions the city was advancing that was in the wrong. And that didn't avoid coverage. In Downey Venture, you had people in an organization at the highest level, and the Downey Court talked about a partnership in a law firm. And why what we're talking about is if an insured is held responsible for the acts of another, which is what's happened with Northwest here. And that's why the instruction that was given to the jury about when can you find an employer liable for the acts of an employee, it's not just authorization or ratification. It is having someone unsuitable for the employment. And I think there's one thing we can agree upon is that Mr. Hanson was unsuitable, but there's no evidence that he acted at whatever the corporate formality is that's required of Northwest. Now I'm not saying they couldn't try to develop that evidence. I'm saying on the record on the motion to dismiss, there's no evidence that Northwest as an LLC issued that instruction. And to us, that's the starting point. And then it also has to be with knowledge it would violate the rights of another. Now we can talk about what Northwest knew or didn't know, but having some intent, some level of intent that the district court said rose to the level of knowledge, that's not the insurance policy. And we cited some of the other exclusions in the policy that show the differences in wording. So we know that Berkeley knew how to word an exclusion correctly when it wanted it to be an objective test as opposed to subjective. I mean this is one of the few, these two exclusions are one of the few sets of exclusions in the policy that used the phrase at the direction of the insured. And we think that when you look at these exclusions, you have to take into account how they're worded. I mean that's why we cited the AIG Cosby decision, because Justice Souter emphasized the need to have that sort of look and to focus on that point. So when the jury instruction is, the employer had advanced knowledge that the employee was unfit for the purposes of employment and employed him or her with conscious disregard of the rights or safety of others. That's one of the standards that this jury was instructed upon. If this is the basis for the punitive damage award and the fraud finding against Northwest, it does not satisfy the requirements of the insurance policy. Because knowledge that an employee is unfit is not the same thing as a direction by Northwest with knowledge that that Hanson's acts would violate Mr. Cohen's rights and would inflict what the policy defined as personal and advertising injury. It's not just a knowing violation, it's also inflict personal and advertising injury. And given the testimony, and that's what I'm saying, they could disbelieve Hanson but there was evidence in the record that Hanson didn't have that intent and there's no evidence in the record that Northwest did or didn't have the intent whatsoever, or let alone the knowledge whatsoever. And that's our point. Motion dismissed, we think it's improper. Okay, thank you very much. Let's hear from your counsel for Defendant Apley, Berkeley National Insurance Company. Mr. Passage's argument about the phrase at direction of the insured is a creative misdirection play stated to this court. We don't have to talk about ratification. It's not that complicated. Northwest, all the Cohen entities, excuse me, all the Cohen entities alleged and the jury found that the insureds in this case each acted fraudulently. They found there are three findings as to each defendant, including the employer, and as to each of those nine counts, nine times they found not alternatively that it was maybe fraud or malice or oppression, they found that it was fraud, malice, and oppression. And so all of this, the discussions about whether this was done at the direction of the insured doesn't matter. There's no, we know that the employees did what they did and the jury found that they acted with fraud, malice, and oppression. And we know the jury also found at the request of the Cohen entities that the insured entity, Northwest, acted with fraud, malice, and oppression. And that fits right into the two exclusions we're looking at down. It says if it was done with the knowledge that the act would violate the rights of another. When you find, when there's a finding of fraud and malice, that exclusion has to apply. If it doesn't apply, it will never apply. When you get with knowledge published with the falsity, that was the whole allegation of the claim. That's why punitive damages were awarded against each of the entities. And why should it be otherwise? Nevada doesn't want the insurance policies to insulate people from their intentionally bad acts. When you read this complaint, it doesn't come as a surprise. When you see the evidence that came in a trial, it's not a surprise the jury found what they did. The District Court found that the exclusions applied because knowledge of a violation in the jury's findings that directions, that defendants acted with the reasonable lay person would be able to find that the knowledge is violation, that knowledge of a violation is implicit in the finding of fraud, oppression, and malice. And we cited cases. Can you explain what's the what's the clearest evidence that there was a finding of knowledge of falsity? Because I take that to be the thrust of the complaint, but you could read it and I think they're suggesting, your opponents are suggesting, that it could be read as they're just indifferent to whether it was true or not. Well, so when you go to knowledge, your honor, the jury was instructed in line with Nevada revised statute 42.001, which defines these words. Fraud is defined as an intentional misrepresentation, deception, or concealment of a material fact known to a person with the intent to deprive another person of his or her rights or property or otherwise injured. So intentional misrepresentation with the intent. Well, I mean that part gets you knowledge of falsity, but I think the suggestion is it could also be accomplished by concealment of material falsehood. Well, yeah, the word intentional applies to concealment. Right, but a concealment is intentional. An intentional concealment doesn't necessarily entail a knowing false statement. With the intent to deprive another of his or her rights, I would respectfully disagree. If I conceal something with an intent to harm another, I think that means I know what I'm doing because I have the intent to harm somebody. And then malice, this is not implied malice case, but malice is intended, you have to intend to injure a person or have despicable conduct with a conscious disregard. Conscious disregard means knowledge of the probable harmful consequences and a willful and up to the knowledge and the requirements of the exclusion. Respectfully, I just think they kind of pin that issue down. I mean, to me, the jury verdict is a trifecta of bad conduct found by the jury. All three found nine separate times covering each act for which the damages were awarded. And both exclusions don't have, I think both exclusions clearly do apply, but both exclusions don't have to apply, only one does. And I don't, and I think malice fits the exclusions, fraud fits the exclusions, and oppression fits the exclusions. But only one of those has to fit the exclusions. I mean, the jury verdict is just, when you see the jury circle those words nine different times, we just know what the jury found and I think it's pretty clear that we can apply that to the insurance policy and come up with the reason why Judge Navarro did what he did and ruled as he did. I'm sorry. I'm not sure it does me any good to argue, to go back and discuss the ratification issues. I don't think they apply. But this case, when you have the CEO of the company, it's not like the Dart case, the Dart Industries case that Mr. Passage cited in which there was no bad conduct found by the board. It's more like the Coit Draperies Cleaners case, also a California case, where the CEO is doing all of the bad things and bound the corporation. But here, it's really not an issue because we don't need to implicate the corporate activity by ratification because the jury did it for us by direct verdict result. Unless the court has other questions, I will see the rest of my time. Okay. Thank you very much. Thank you. Let's put two minutes on the clock for rebuttal in case you need that. Your Honor, to me, where you have ships passing in the night to some degree, the President and I think it comes down to this, are the standards the same? I acknowledge what the jury instruction said. It would be hard for me to disagree with it. It's in the record. But if you juxtapose the jury instructions with the specific wording of the two exclusions, then the district court should be reversed. There was nothing in there that compelled that the finding of fraud or malice or oppression against Northwest be based on ratification. In DART Industries, the important point is this. The court rejected the application of the exclusion because the insurer did not prove that there was ratification or authorization. Berkeley has offered no evidence that Northwest authorized or ratified these acts. It may be able to develop that evidence, but it wasn't here and it couldn't be here on motion to dismiss. That's why I cited the jury instruction that was page 46 of 49 in our attachment to the response to request for judicial notice because it clearly indicated, as I said earlier, that the finding supporting punitive damages for fraud, malice or oppression could be based on that knowledge that the employee was unfit for the purposes of employment. If that's what the jury found here for why Northwest was liable for fraud, oppression and malice, then we're done. The case is over and they should lose. Now, they're obviously disputing that on a partial record that they submitted, but it was not a record before the district court and I would submit with that instruction, when you look at the set of instructions as a whole, it permits that proof. What's the instruction that you're focused on again? It's on page 46 of 49 of our supplemental submission in response to the request for judicial notice, lines 21, starting at line 21 on that page, and it sets forth the alternative basis. I'm sorry, I'm just, I want to be able to find this. It's where? It's in your response? In our response to the judicial notice where they had attached some of the jury instructions, we attached the rest. The ones on negligence, for example, and the ones in particular on how you find a corporate entity liable. At the bottom of page 46 of 49 is the full instruction that I just referenced. The alternative basis follows from 46 to 47, which is ratification or authorization. So we're saying this jury could have found fraud, oppression, or malice based on the first element. That element, as a matter of law, does not satisfy the policy requirements and the exclusions. So that's our point. Okay. Thank you very much. We appreciate the helpful arguments today. The case just argued
judges: Watford, Miller, Benitez